*Southern District*
## SUSANNA MacPHERSON
### v.
## SEARS, ROEBUCK AND COMPANY

*Present*: Nash, C. J., Lee & Owen, JJ.

Case tried to *Robinson, J.* in the District Court of East Norfolk. No. 25907.

*Lee, J.* This is an action of tort for conversion of a fence and gates of the plaintiff in which the declaration alleges damage to the plaintiff, in Count I, in the amount of $429.00, and in Count II, for damages incurred by the plaintiff in the operation of a Nursery School. The answer is a general denial and that the title and right to possession of the fence and gates were in the defendant at the time of the removal of the same.

*At the trial there was evidence tending to show that:*

The fence which the plaintiff alleges was converted by the defendant was purchased by the plaintiff from the defendant at its Brockton Store, on a printed form of agree-

ment, dated November 18, 1960, the original copy of which was introduced in evidence and is incorporated and made a part of the findings and rulings of the trial judge. The agreed total purchase-price was $429.00, which was to have been paid in "cash" upon the completion of the installation of the fence.

The plaintiff refused to make any payment to the defendant, her testimony, in effect, being that the fence was not completely installed as agreed.

The defendant's agents gave notice of their intention to repossess the fence and gates for non-payment, and cited the provisions of the General Laws Commercial Code, [c. 106].

The fence was ultimately properly installed by the defendant on the premises of the plaintiff.

On September 26, 1961, at 3:00 P.M. the defendant's agents started to remove the fence from the plaintiff's premises and had completed the same by 3:30 P.M. on that date.

Not all of the parts of the fence covered by the agreement were removed; the fence posts were left standing in the ground on the plaintiff's premises as they were set in cement. Defendant testified only 100 feet of wire and two gates were repossessed.

The plaintiff testified that she gave her son a personal check in the amount of $429.00, payable to Sears, Roebuck and Company and that her son left the check with a clerk at the

Sears, Roebuck Store at Brockton at 1:30 P.M. on September 26, 1961.

The Assistant Manager of the defendant testified that records made in the usual course of business show that the check was received by a clerk at the defendant's store at 3:30 P.M. on September 26, 1961, and that the check was not presented for payment at the bank upon which it was drawn and the payment of the amount of the check was not received by the defendant until two days after the defendant removed the fence. This original check was introduced in evidence and is incorporated and made a part of the findings and rulings of the trial judge.

There was no other evidence concerning this check other than its mere receipt on September 26, 1961, and its payment to the defendant's account two days later, by the bank on which it was drawn, two days after the removal of the fence.

There was testimony that at a later date an agent of the defendant returned three large bails or bundles of wiring to the plaintiff's premises, the wire removed in the repossession and that the plaintiff still retained possession of these.

There was further testimony that this agent noted the items originally sold by the defendant which had not been repossessed and which were still on the premises and that he made a delivery order of the items necessary to reinstall the fence.

There was testimony that these necessary

items, namely, two gates and some minor incidental items, were delivered by the defendant's agent to the plaintiff's premises a few days later.

The plaintiff produced the aforesaid delivery order in court but was unable to explain how it got into her possession. The delivery order was made an exhibit and incorporated and made a part of the findings.

The plaintiff refused to pay any costs of repossession or any of the costs of reinstallation of the fence.

The plaintiff used about 10 or 12 feet of the wiring redelivered in enclosing a dog-pen; all of the posts originally ordered are still in the ground as originally ordered by the plaintiff which defendant did not desire to repossess.

The plaintiff testified that she did not see the three bales of wiring and the two gates and other items that were returned and left on the plaintiff's premises. The fence and gates were not reinstalled by defendant.

At the trial the following question, put to the witness Susanna MacPherson in direct examination by the plaintiff, "As a result of the repossession of the fence by defendant, were you deprived of carrying on your business?" was admitted against the objection of the defendant. The defendant requested that the said ruling be reported. The plaintiff answered "Yes".

At the trial, the following question put to the witness Susanna MasPherson in direct

examination by the plaintiff, "What damage to your business did you suffer as a result of the defendant's removal of the fence?" was admitted against the objection of the defendant. The defendant requested that the said ruling be reported. The plaintiff answered, "I lost three pupils for three weeks who were paying Twenty-Five Dollars each per week."

The defendant made the following requests for rulings:—

1.  The defendant had a valid purchase money security interest in the fence.
2.  Under the security interest the title and right to possession in the fence was retained in the defendant until the total price of $429.00 was paid.
3.  The fence was properly installed by the defendant.
4.  At no time prior to repossession by the defendant of the fence had any portion of the price been paid by the plaintiff.
5.  The repossession of the fence by the defendant was performed without any breach of peace.
6.  The payment of the price by the plaintiff occurred after the defendant had completed its repossession of the fence.
7.  The plaintiff refused to pay anything to the defendant toward the expense of repossession.
8.  The defendant's return of the fence to the plaintiff was in good faith.
9.  The defendant's refusal to pay the costs of

reinstallation of the fence was not unreasonable.

10. The defendant after repossession was not required to make disposition by sale but could make such disposition as was commercially reasonable.

11. After delivery of the fence to the plaintiff, the plaintiff had a duty to take reasonable care that the fence was not stolen or otherwise disposed of.

The trial judge made the following "Findings and Rulings":

"This is an action of tort for conversion of a chain link fence wherein the plaintiff seeks damages for the value of said chain link fence in the sum of $429.00. I find that the defendant did convert the chain link fence in question and did wrongfully convert the same and that the plaintiff, who had paid previous to the time of the conversion the sum of $429.00, is entitled to the return of the sum of $429.00 which had been paid by her previous to the time of the conversion. The defendant claims that the sale of the chain link fence was on a so-called time sales agreement with title to the chain link fence remaining in the defendant subject to payment by the plaintiff and that the plaintiff not having paid the price it had a right to repossess the fence. The plaintiff claims that the sale of the fence was on the basis of a cash sale by the terms of which the plaintiff obtained immediate title with only an obligation to pay the price and that the defendant

had no right in title to repossess the fence. There is no doubt that the defendant repossessed the fencing material or as much of the fencing material as it desired to repossess. I have heard the witnesses for the defendant as well as the plaintiff and all of the written exhibits are incorporated and made a part hereof. I find that the sale of the fencing material was a cash sale not a so-called time sale, regardless of the printed form used, with retention of title in the defendant and that title of the fencing material passed to the plaintiff at the time the fence was installed. I further find that even if it could be construed legally as a conditional sale that the sum of $429.00 was paid prior to the repossession, even though it was within minutes of the time of repossessing, and that, therefore, the defendant had no right to repossess the fence or that portion thereof which was chosen to be repossessed by the defendant and that this was an act of conversion.

Therefore, on Count I of the declaration I find for the plaintiff in the sum of $429.00.

On Count II of the declaration, I find as follows:—

The plaintiff is the owner of a nursery school known as Humpty Dumpty School and that the fence in question is an integral and important part by law of maintaining such a school for children and that in consequence of the wrongful conversion of the fence she was damaged in the conduct of

the school and that this wrongful conversion has resulted in loss to her and I, therefore, find that she is entitled to damages in the sum of $250.00.

Therefore, on plaintiff's declaration I find as follows:—

On Count I, I find for the plaintiff in the sum of $429.00.

On Count II, I find for the plaintiff in the sum of $250.00.

The defendant has filed general requests for rulings unnumbered, and I rule on them as follows:

I rule that the defendant had no valid purchase-money security interest.

I rule that the defendant had no security interest in the fence, that the sale between the parties was a cash sale.

I find that the fence was properly installed.

I find that the price of the fence was paid prior to the so-called repossession of the fence and that the so-called repossession thereafter of the fence was an act of conversion and resulted in damages to the plaintiff.

In general, this finding is an obvious ruling on the other general requests for rulings of the defendant."

The defendant claims to be aggrieved by the rulings given to requests for rulings numbers 1, 2, 4, 6 and by the refusal to rule on requests for rulings numbers 5, 7, 8, 9, 10 and 11 above.

The vital issue in this case is whether title to the fence resided in the plaintiff or the

defendant. An examination of the evidence and the exhibits clearly support the trial judge's findings of fact as to title being in the plaintiff.

The defendant's main contention is that Exhibit number 3 entitled "Easy Payment Account Order Blank" is a written agreement which gives it a security interest in this property and the right to repossess in default of payment. An inspection of this document does not bear out the defendant's contention. It is in no sense a completed instrument and the judge was justified in treating it simply as a memorandum of a cash sale.

The evidence also supports a finding that the defendant's agents did remove a substantial portion of the fence and converted it to its own use and that the plaintiff had paid the full amount for the fence in the sum of $429.00.

We come now to the judge's rulings on the defendant's requests for rulings. His denial of numbers 1, 2, 4, and 6 are amply supported by the evidence and his findings of facts. The failure of the court to rule specifically on numbers 5, 7, 8, 9, 10 and 11 became immaterial in the light of the court's findings of facts. *Ajax Shoe & Leather Co. v. Selig,* 305 Mass. 389, 391; *Poulos v. Poulos,* 303 Mass. 231, 234.

In addition, a number of these last requests were actually for findings of fact which the court was not compelled to grant.

*Crowninshield Shipbuilding Co. v. Jackman,* 283 Mass. 21, 22.

On the question of damages, the judge was correct in treating the conversion as a total loss to the plaintiff, even though part of the fence (i.e. several posts) was left in the ground, and allowing the plaintiff to recover the full purchase-price of $429.00. The judge was also right in awarding the plaintiff consequential damages for the loss of her Nursery School business which was caused by the conversion of the plaintiff's fence by the defendant. *Food Specialty v. Dowd, Inc.,* 339 Mass. 735, 748.

During the trial, the plaintiff was allowed to answer two questions subject to the defendant's objections. The defendant claimed a report, timely, but failed to perfect its claim by reducing it to writing in a summary manner and filing said claim with the clerk *within five* (5) *days* after hearing of all the evidence in compliance with Rule 27 of the Rules of the District Court. (*Rule 27 was amended to allow said claim to be filed within five* (5) *days after the hearing of all the evidence as of February* 13, 1963. *This amendment was in effect upon December* 16, 1963, *the day of the rulings in this case.*)

An inspection of the docket in this case discloses no such claim in writing filed with the clerk within five (5) days after the hearing of all the evidence, and the matter was evidently brought up for the first time when

the defendant filed his draft report on January 16, 1964.

The defendant having failed to perfect its claim in regard to the rulings of the trial judge upon the admission of evidence cannot now have them reviewed by the Appellate Division. *Okin v. Sullivan,* 307 Mass. 227, 228.

*There being no prejudicial error, the report is dismissed.*

Schair & Duquet, of South Braintree, for the Plaintiff.

James H. Fitzgerald, of Brockton, for the Defendant.